UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RICHARD JOSEPH SCHREIBER, SR.,

Plaintiff,

v.

Case No. 25-cv-1602-pp

CO BOWDEN, *et al.*,

Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 20) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff Richard Joseph Schreiber, Sr., who previously was confined at the Brown County Jail and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging violations of his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1. It also resolves the plaintiff's motion to appoint counsel, dkt. no. 20.

**I.     Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On November 10, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $33.52. Dkt. No. 10. The court received that fee on January 26, 2026. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee.

## II.    Screening the Complaint

### A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face."

2

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter C'nty Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. C'nty of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The plaintiff was confined at the Brown County Jail during the events described in the complaint. Dkt. No. 1 at 1. He alleges that on August 5, 2025, he heard a correctional officer say over the intercom, "Bring your booty over here." Id. at 2. The plaintiff says that it appeared that the officer was speaking to an "inmate unit worker." Id. The officer's comment allegedly offended the plaintiff; he hit the button in his cell to get the officer's name, at which time an officer barged into the dayroom yelling and "throwing a temper tantrum." Id. at 2-3. The plaintiff states that the officer informed both "inmate workers" that

3

the plaintiff was writing a PREA (Prison Rape Elimination Act) complaint. Id. at 3. Then, the officer allegedly "aggressively confronted" one of the workers with, "Did you mind me saying bring your booty over here?" Id. The plaintiff states that the worker was about seventy years old and the plaintiff was about fifty-seven, and it was emotionally and physically degrading for the officer to be saying this. Id.

The plaintiff states that the other "inmate worker" went to the officer station, then approached the plaintiff's cell and yelled at him about his "weak ass writing up his C/O for bullshit[.]" Id.  The other worker allegedly yelled at the plaintiff and tried to intimidate him for at least five minutes. Id. at 4. The plaintiff says that the worker said the officer who made the comments was cool and had a family. Id. When the plaintiff allegedly informed the worker that he still would be submitting the PREA report, the worker tried to get the plaintiff's cellmate to "choke [him] out." Id.

The plaintiff alleges that the PREA committee did nothing and chalked it up to the incarcerated individual joking with the plaintiff. Id. In addition, defendant Officer Smith allegedly was warned not to talk like he did. Id. The plaintiff states that Smith worked on the unit for several days and began to ridicule the plaintiff by saying things over the intercom. Id. The officers working on the unit allegedly began to target the plaintiff, insult him and bait him into an altercation. Id. at 4-5.

The plaintiff alleges that on August 9 he was to be released from the intake unit into the general population, and he was "somehow classified as

maximum security" even though he was at the jail accused of theft. Id. at 5. With the maximum-security classification, the plaintiff allegedly had to be belted and escorted to a new unit. Id. He states that when he arrived, an "enormous amount" of correctional officers were there to greet him, telling him to put his hands out to be handcuffed and belted. Id. Defendant Officer Smith allegedly then stepped before the plaintiff "with the cuffs and an evil smile." Id. The plaintiff states that he fully complied because he was very frightened of what would happen and where they were taking him. Id. The plaintiff states that three days earlier, he had filed a complaint against Smith. Id.

The plaintiff states that defendant Officer Kroll was in his new housing unit. Id. at 6. Kroll allegedly was a major part of the "CO Smith incident" because he was the officer in charge the day Smith made the "booty call." Id. The plaintiff states that he stayed in the housing unit for about forty-five days and he was mentally tormented the entire time. Id. While there, a lieutenant allegedly informed the plaintiff that his son was found dead in his car of an apparent overdose. Id. The plaintiff states that Kroll witnessed this as well as the plaintiff's anguish, and he continued to punish the plaintiff for the smallest infractions. Id. Officers and staff allegedly mentally tormented the plaintiff for his grievances and prior reporting and correspondence with the PREA auditor. Id. The plaintiff states that his institution "conveniently" lost his mail because he was "taking civil action against them in this suit[.]" Id. He also states that despite losing his son to a heroin overdose, they housed him with two major heroin dealers, and he has been asking to be moved for weeks. Id. One of the

5

heroin dealers allegedly put a "hit" out on the plaintiff, and staff still did not move him. Id. at 6-7.

For relief, the plaintiff seeks monetary damages and injunctive relief. Id. at 8.

C.    Analysis

Although it is not entirely clear, the plaintiff appears to allege that he was classified as maximum security because he filed a PREA complaint against Smith. He also alleges that Smith and Kroll took adverse actions against him because of the PREA complaint. To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)). At this early stage, the plaintiff may proceed on a retaliation claim against Smith and Kroll in their individual capacities.

The plaintiff has sued thirty-eight defendants, but the body of the complaint does not mention most of them. Other than Smith and Kroll, the plaintiff has not alleged that any defendant he sues engaged in conduct that violated his constitutional rights. The court will dismiss the other thirty-six defendants because the plaintiff has not stated a plausible claim for relief against them.

The plaintiff alleges that while confined at the Brown County Jail, he was placed in a cell with heroin dealers who put a "hit" out on him. The plaintiff does not allege who placed him in the cell or who he asked about being removed from the cell. The plaintiff also does not allege that the heroin dealers harmed him, and he no longer is confined at the jail. These allegations do not state a claim.

Finally, the plaintiff's last address was the Shawano County Work Release Center, but he no longer is confined there. The court's staff called the Center; staff there said that the plaintiff was released on May 13, 2026 and provided a new address for the plaintiff: N7884 Big Lake Road, Gresham, Wisconsin 54128. The court has updated the docket with this address.

### III. Motion to Appoint Counsel (Dkt. No. 20)

The plaintiff has filed a motion to appoint counsel. Dkt. No. 20. He says that he has no money and has been incarcerated for nine months. Id. at 2. The plaintiff states that he reached out to several attorneys but has not received a response or they say they won't take his case. Id.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for

these cases.'" <u>Henderson v. Ghosh</u>, 755 F.3d 559, 564 (7th Cir. 2014) (quoting <u>Olson v. Morgan</u>, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" <u>Eagan v. Dempsey</u>, 987 F.3d 667, 682 (7th Cir. 2021) (quoting <u>Pruitt v. Mote</u>, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. <u>Watts v. Kidman</u>, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. <u>Pickett v. Chi. Transit Auth.</u>, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." <u>Eagan</u>, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." <u>Eagan</u>, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel."

<u>Pennewell v. Parish</u>, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." <u>Id.</u> This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." <u>Id.</u> at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." <u>Id.</u> at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." <u>Pickett</u>, 930 F.3d at 871.

Although the plaintiff says that he reached out to attorneys to try to find one on his own, he did not provide the court with the responses he received or the names of the attorneys he contacted. The plaintiff has not satisfied the threshold requirement of demonstrating that he tried to find a lawyer on his own. Even if he had, the plaintiff's circumstances have changed because he recently was released from confinement. He now has more resources available to litigate the case. And the plaintiff's claim is not complex; he is competent to proceed on his own at this stage of the case. The court will deny without prejudice the plaintiff's motion to appoint counsel.

9

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 20.

The court **DISMISSES** defendants CO Bowden, CO Wotruba, CO Lee, CO Bodendein, CO Binkowski, CO Davies, CO Zimmerman, Lt. Timreck, Lt. Golly, Lt. Halasi, Lt. Strum, Corporal Leyendecker, Corporal Krings, Corporal Laurent, Corporal Mekash, Corporal Vetsch, Corporal Bartels, Cpl. Kugava, Cpl Foss, Cpl. Rose, Cpl. Kuchta, Cpl. West, Cpl. Smith, Cpl. Pelischek, Cpl. Nelson, Cpl. Dimmer, Cpl. O'Loaner, Cpl Ohquarne, Cpl. Ciesirolcz, Cpl. Voster, Cpl. Weed, Cpl. H. Michel, Lt. Rhode, Lt. Triurner, Lt. Brisbane and Lt. Shartner.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendants CO Kroll and CO Smith under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendants Kroll and Smith to file a responsive pleading to the complaint.

The court **ORDERS** that the plaintiff must pay the $316.48 balance of the filing fee to the court as he is able.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that the plaintiff must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

11

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 6th day of July, 2026.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

12